are numerous other appearances of fraud in the future conduct of the parties in relation to the mortgaged property, each of which was sufficient to justify the creditors in proceeding as they did in relation to it; such as the stock remaining in the hands of the mortgagor a considerable time after the maturity of the mortgage; the amount of stock being at the same time rapidly reduced and no payments made upon the mortgage debt; no efforts being made by the mortgagee to take possession of, and sell the goods under the mortgage until creditors became pressing and attachments were imminent.

It is unnecessary to consider in this case the question of the right of creditors, proceeding against their debtor in bankruptcy, to cause mortgaged property to be seized and sold in any case where there are no other assets, and I therefore express no opinion upon that point. The creditors were clearly justified in proceeding as they did in this case, for the reasons above stated, and are entitled to be reimbursed for their reasonable costs and expenses, out of the funds arising from the sale of the property seized. Let an order be entered directing the marshal, out of the proceeds of the sale of the property seized in this case, to pay over to the petitioning creditors, or their attorneys, the amount of their reasonable costs, expenses, and disbursements paid or incurred by them in the proceedings in this matter, including the said sale, upon presentation to him of a taxed bill of the same, and take a receipt therefor, and that he pay over to George Dahmer, as mortgagee of said goods, or his attorney, the balance which shall remain after paying such costs and expenses aforesaid, and take a receipt therefor, and file all receipts taken by him, in pursuance of said order, with the clerk of this court, together with a full report of his doing in the premises from and including the said sale.

---

DUN (DUNCAN v.).   See Case No. 4,134.
DUN (SELMAN v.).   See Case No. 12,648.

---

## Case No. 4,127a.
DUNBAR v. ALBERT FIELD TACK CO. et al.

Circuit Court, D. Massachusetts.   1879.
[See 4 Fed. 543.]

---

## Case No. 4,128.
DUNBAR v. BALL.

[2 Cranch, C. C. 261.][1]

Circuit Court, District of Columbia.   Oct., 1821.

SLAVERY — BRINGING SLAVES IN DISTRICT OF COLUMBIA—RIGHT TO FREEDOM.

If a citizen of the United States owning a slave in Virginia, and residing there, removes

to the county of Washington, in the District of Columbia, with a bona fide intention of settling therein; and afterwards causes the said slave to be brought into said county, through the county of Alexandria, within one year after such removal; and if the owner, within three years after such removal, sell the said slave, the slave thereby becomes entitled to freedom; notwithstanding the acts of congress of the 3d of May, 1802, § 7 [2 Stat. 194], and 24th of June, 1812, § 9 [2 Stat. 757], the said slave having been in Alexandria county merely in transitu.

[Cited in Battles v. Miller, Case No. 1,110.]

Petition for freedom. The facts were agreed to be as follows:—"The petitioner [Leonard Dunbar] is a native-born slave of Virginia, and was there purchased by one John B. Brunet, a citizen and inhabitant of that state, some time in the month of March, 1820; and continued there in the possession and service of said Brunet, until some time about the 25th of March last (1821,) when the said Brunet removed from the said state into the district of Columbia and settled himself as a citizen and inhabitant of Georgetown, in the county of Washington, leaving the said petitioner in Virginia for about three weeks after such removal of said Brunet, the said petitioner continuing to be the bona fide property of said Brunet, and so being the bona fide property of the said Brunet, was, in about three weeks after the removal and settlement of the said Brunet in Georgetown, as aforesaid, brought, by the order of said Brunet, from Virginia, through Alexandria county, into Georgetown aforesaid, and there continually kept in the possession and service of the said Brunet, until some time about the 20th of July last (1821,) when the petitioner was sold in Georgetown, by said Brunet to the defendant [James Ball] as a slave for life."

By the 1st section of Act Md. 1796, c. 67, adopted by congress as the law of this county, a slave brought into the state, for sale, or to reside, ceases to be property, and becomes free. By the 2d section, however, it is provided that it shall be lawful for any citizen of the United States who shall come into the state with a bona fide intention of settling therein, to bring into the state, at the time of his removal, or within one year thereafter, any slave, the property of such citizen at the time of his removal, and to retain the same as a slave. But by the 3d section it is enacted, "that nothing herein contained, shall be construed to enable any person or persons, so removing as aforesaid, to sell or dispose of any slave or slaves, imported by virtue of this act, or their increase, unless such person or persons shall have resided within this state three whole years next preceding such sale, except in cases of disposition by last will and testament, and dispositions by law for bona fide debts, or consequent upon intestacy." By the act of congress of the 3d of May, 1802, § 7 (2 Stat. 193), it is enacted, "that no part of the laws of Virginia or Maryland, declared by an act